UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GUELLOR NGANU MBAKI,

        Petitioner,

    v.

TODD BLANCHE; MARKWAYNE MULLIN;
MICHAEL BERNACKE; DAVID VENTURELLA;
and JOHN MATTOS,

        Respondents. [1]

Case No. 2:26-cv-01665-AMB-MDC

ORDER

**BAGGIO, District Judge:**

On June 24, 2026, Petitioner Guellor Nganu Mbaki filed an Amended Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241. Am. Pet. On July 8, 2026, Respondents moved to

dismiss Petitioner's Amended Petition. Resp'ts' Mot. Dismiss ("Resp'ts' MTD"), ECF No. 8.

Petitioner subsequently filed a Reply in support of his Amended Petition, Pet'r's Reply ISO Am.

---

[1] Petitioner's Amended Petition for Writ of Habeas Corpus substitutes the following Respondents: (1) Todd Blanche for Pamela Bondi, (2) Markwayne Mullin for Kristi Noem, and (3) David Venturella for Todd Lyons. Am. Pet. Habeas Corpus ("Am. Pet.") 1 n.1, ECF No. 7. The Clerk of the Court is directed to docket these substitutions.

1 – ORDER

Pet. ("Pet'r's Reply"), ECF No. 9, and Respondents filed a Reply in support of their Motion to Dismiss, Resp'ts' Reply ISO Resp'ts' MTD ("Resp'ts' Reply"), ECF No. 10. For the following reasons, the Court grants Petitioner's Amended Petition and denies Respondents' Motion to Dismiss.

## BACKGROUND

Petitioner is a citizen of the Democratic Republic of the Congo. Am. Pet. Ex. C, at 2, ECF No. 7-3.[2] In December 2022, Petitioner was admitted to the United States as a student under an F-1 Visa. *See* Am. Pet. 3; Am. Pet. Ex. C, at 3; Am. Pet. Ex. D, at 2, ECF No. 7-4. Under Petitioner's F-1 Visa, he is permitted to remain in the United States until March 9, 2028. Am. Pet. Ex. C, at 3.

On August 28, 2023, Petitioner was convicted in the Fifth Judicial District Court, in and for Iron County, State of Utah, for Attempted Forcible Sexual Abuse under Utah Code § "76-5-404(2)+(3A)." Am. Pet. Ex. D, at 2; Resp'ts' MTD Ex. A, at 5, ECF No. 8-1.[3] Petitioner was sentenced to five years in the Utah State Prison, but his prison term was suspended. Resp'ts' MTD Ex. A, at 8. Petitioner was ultimately placed on probation for forty-eight months. *Id.* at 9. Petitioner was successfully terminated from his probation in April 2026. Am. Pet. Ex. F, at 2, ECF No. 7-6.

On March 30, 2026, Petitioner was detained by federal officers. *See* Am. Pet. Ex. B, at 2, ECF No. 7-2 (I-200 Warrant for Arrest of Alien); Am. Pet. Ex. C, at 3 (Form I-213). Petitioner was charged as removable under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act,

---

[2] All pinpoint citations to the exhibits attached to the Amended Petition refer to the ECF-generated page numbers.

[3] All pinpoint citations to Exhibit A of Respondents' Motion to Dismiss refer to the ECF-generated page numbers.

i.e., 8 U.S.C. § 1227(a)(2)(A)(i). Am. Pet. Ex. D, at 2. Petitioner has since been in custody at the Nevada Southern Detention Center. Am. Pet. 2. Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(C). Resp'ts' MTD 1. Petitioner has not received a bond hearing. Am. Pet. 5.

## DISCUSSION

Petitioner argues he qualifies for habeas relief on multiple grounds. Am. Pet. 5. For purposes of this Order, the Court finds ground one dispositive. *See id.* at 5–9. In ground one, Petitioner asserts that he is not subject to mandatory detention under § 1226(c) because his 2023 criminal conviction was not for a crime involving moral turpitude and because he was detained years after his release from criminal custody. *Id.* Petitioner ultimately seeks release from immigration detention or, alternatively, a constitutionally adequate bond hearing before an immigration judge ("IJ"). *Id.* at 15. The Court finds that whether Petitioner's 2023 criminal conviction was for a crime involving moral turpitude is an issue subject to exhaustion. Nevertheless, the Court finds that Respondents' detention of Petitioner years after he was released from criminal custody and without a bond hearing violated Petitioner's due process rights. Accordingly, the Court orders Petitioner immediately released.[4]

## I.     Exhaustion

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion if:

---

[4] Petitioner also argues that his detention under § 1226(c) has become unconstitutionally prolonged and that Respondents' failure to review his initial custody determination was unconstitutional. Am. Pet. 9–12. In light of the Court's findings on ground one, the Court declines to address these issues as moot.

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). If a petitioner does not exhaust their administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Administrative exhaustion "prevent[s] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors." *Arsdi v. Holder*, 659 F.3d 925, 928 (9th Cir. 2011) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

"Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). A court's "discretion to waive the exhaustion requirement when it is prudentially required . . . is not unfettered." *Laing*, 370 F.3d at 998.

Here, applying the three *Puga* factors, the Court finds that prudential exhaustion—i.e., a *Joseph* hearing and an appeal to the Board of Immigration Appeals ("BIA"), if necessary—is required before the Court can resolve whether Petitioner's 2023 criminal conviction was for a crime involving moral turpitude. *See Villanueva Abarca v. Chestnut*, No. 1:26-CV-05436 DAD SCR, 2026 WL 2124159, at *3 (E.D. Cal. July 23, 2026) ("Generally, principles of prudential

4 – ORDER

exhaustion require a noncitizen to pursue a *Joseph* hearing before raising § 1226(c) objections in habeas.").[5] The Court finds exhaustion of this issue appropriate because an IJ and the BIA have the expertise to generate a proper record and reach a proper decision on the issue; relaxation of the exhaustion requirement will encourage petitioners to bypass a *Joseph* hearing; and administrative review is likely to correct any issues with Petitioner's detention under § 1226(c) and preclude the need for judicial review.

In addition, Petitioner has not shown why the exhaustion requirement should be waived. Though Petitioner requested an IJ to review his custody determination, Am. Pet. Ex. E, at 2, ECF No. 7-5, Petitioner has not shown that he has specifically requested a *Joseph* hearing. Moreover, Petitioner has not shown how a *Joseph* hearing would be inadequate, not efficacious, or futile under the circumstances. Rather, given the purpose of a *Joseph* hearing, the Court finds it to be the appropriate forum at which Petitioner can argue that his 2023 criminal conviction was not for a crime involving moral turpitude. *See Demore*, 538 U.S. at 514, 514 n.3 (explaining that at a *Joseph* hearing, a detainee may "raise any nonfrivolous argument available to demonstrate that [they are] not properly included in a mandatory detention category[,]" including that they were "not convicted of the predicate crime" or that "the INS is otherwise substantially unlikely to establish that [they are] in fact subject to mandatory detention").

---

[5] At a *Joseph* hearing, a detainee is "entitled to raise any nonfrivolous argument available to demonstrate that [they were] not properly included in a mandatory detention category." *Demore v. Kim*, 538 U.S. 510, 514 (2003); *see also Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019) ("Detainees who deny that they satisfy any § 1226(c) predicate may challenge their mandatory detention in a *Joseph* hearing."). This includes "demonstrating that [they are] not an alien, [were] not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that [they are] in fact subject to mandatory detention." *Demore*, 538 U.S. at 514 n.3. If a detainee succeeds at a *Joseph* hearing, the IJ may order the detainee released on bond under 8 U.S.C. § 1226(a). *See Mahdawi v. Trump*, No. 25-1113, 2026 WL 2090981, at *11 (2d Cir. July 21, 2026). A denial of relief may be appealed to the BIA. *Id.*

For these reasons, the Court stays any findings on this issue until a *Joseph* hearing is held and any ruling appealed to the BIA. *See Hernandez*, 872 F.3d at 988 ("If a petitioner fails to exhaust prudentially required administrative remedies, then a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." (internal quotation marks omitted)).

## II.    Due Process

Notwithstanding the fact that Petitioner has not satisfied the exhaustion requirement, and assuming Petitioner is subject to mandatory detention under § 1226(c), the Court finds that Respondents' initial detention of Petitioner without a bond hearing and years after his release from criminal custody violated Petitioner's due process rights. Accordingly, the Court orders Petitioner immediately released.

In *Nielsen*, the Supreme Court "confronted a statutory challenge to § 1226(c) made by a class of non-citizens who argued that § 1226(c) did not authorize their mandatory detention without a bond hearing because they had not been detained 'immediately' following their release from custody for a § 1226(c)-eligible offense." *Perera v. Jennings*, 598 F. Supp. 3d 736, 743 (N.D. Cal. 2022). In *Nielsen*, the noncitizens were detained after they were released from criminal custody—some "several years" after they were released from criminal custody. 586 U.S. at 399. The *Nielsen* Court ultimately rejected the noncitizens' statutory arguments, finding that mandatory detention under § 1226(c)(1) applied to any noncitizen "linked with a predicate offense . . . regardless of exactly when or even whether the [noncitizen] was released from criminal custody." *Id.* at 418; *see also Pham v. Becerra*, 717 F. Supp. 3d 877, 885 (N.D. Cal. 2024) ("In *Nielsen v. Preap*, the Court held that § 1226(c) does not require bond hearings even for noncitizens . . . whose removal proceedings (and detention) commenced long after their

6 – ORDER

release from criminal custody."). The *Nielsen* Court, however, explicitly left open the possibility for as-applied constitutional challenges to its reading of § 1226(c). *See* 586 U.S. at 420 ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

Since *Nielsen*, several courts have engaged in as-applied challenges to the application of § 1226(c). *See, e.g.*, *Pham*, 717 F. Supp. 3d at 884; *Perera*, 598 F. Supp. 3d at 744. In both *Pham* and *Perera*, the district courts applied the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found that detention under § 1226(c) without a bond hearing violated the petitioners' due process rights. *See* 717 F. Supp. 3d at 887; 598 F. Supp. 3d at 748. Consistent with *Pham* and *Perera*, the Court evaluates Petitioner's as-applied challenge here using the *Mathews* factors.[6] *See* Am. Pet. 8 ("[R]e-detention after years of release is a constitutional problem.").

A.      Private Interest

Petitioner's liberty interest here is well recognized. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And though Petitioner's liberty interest as a noncitizen is "subject to limitations and conditions not applicable to citizens," *id.* at 718 (Kennedy, J., dissenting); *see also Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."), the Court finds

---

[6] The *Mathews* factors include (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

7 – ORDER

Petitioner's liberty interest heightened considering his good conduct following release from criminal custody, *see Perera*, 598 F. Supp. 3d at 745 (finding that the petitioner's clean record and success in the time between criminal custody and immigration detention supported the petitioner's private interest). Indeed, since Petitioner was released from criminal custody in October 2023, he has re-enrolled at Southern Utah University, Am. Pet. 4, successfully completed his probation, Am. Pet. Ex. F, at 2, and has been described by others as "a person of good character[,]" "show[ing] great signs of change and repentance[,]" and "work[ing] diligently to rebuild his life on a foundation of integrity and responsibility[,]" Am. Pet. Ex. A, at 3–5, ECF No. 7-1. The Court thus finds this factor weighs in Petitioner's favor.

B.      Risk of Erroneous Deprivation

The risk of an erroneous deprivation of Petitioner's private interest without a pre-detention bond hearing is significant. To be sure, the purposes of mandatory detention under § 1226(c), i.e., to reduce crime and ensure appearance at removal proceedings, are diluted where, as here, Petitioner does not appear to pose a danger to the community or a flight risk. *See Demore*, 538 U.S. at 518–20 (explaining Congress's intent behind § 1226(c)); *see also Pham*, 717 F. Supp. 3d at 886 ("[T]he record shows that [petitioner] does not pose a danger to society or present a flight risk—the very justification for mandatory detention."). Moreover, the value of a pre-detention bond hearing in reducing an erroneous deprivation of Petitioner's private interest is high. The Court thus finds this factor weighs in Petitioner's favor.

C.      Respondents' Interest

Respondents certainly have an interest in mandatory detention under § 1226(c) to protect the public, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), and ensure noncitizens appear for their removal hearings, *Demore*, 538 U.S. at 519. Requiring Respondents

8 – ORDER

to provide Petitioner with a pre-detention bond hearing, however, does not undermine that interest. *See Pham*, 717 F. Supp. 3d at 887. Indeed, at a bond hearing, Respondents "are free to argue that [Petitioner] should not be released from custody because he is a flight risk or a danger to the community." *Perera*, 598 F. Supp. 3d at 746. In addition, Respondents' interest here is reduced by its years-long delay in detaining Petitioner. *See id.* ("ICE's multi-year delay in pursuing custody of [petitioner] following his release from criminal custody suggests that the Government has a low interest in detaining [petitioner].")." If Petitioner truly presented a danger to the community or a flight risk, Respondents could have detained him much sooner after he was released from criminal custody. The Court thus finds this factor neutral.

***

In sum, in weighing the *Mathews* factors, the Court finds that Respondents' detention of Petitioner under § 1226(c) without a bond hearing and years after Petitioner's release from criminal custody violated Petitioner's due process rights. The Court thus orders Respondents to immediately release Petitioner from immigration detention. The Court finds release, rather than a bond hearing, appropriate "[b]ecause the constitutional violation is the absence of *pre-deprivation* process . . . ." *Kirykovich v. Hernandez*, No. 2:26-CV-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026). Therefore, "the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Id.*; *accord Gonzalez v. Blanche*, No. 2:26-CV-00674-ART-EJY, 2026 WL 1346637, at *5 (D. Nev. May 14, 2026); *Monterrey v. Bondi*, No. 2:26-CV-00634-GMN-MDC, 2026 WL 1329725, at *6 (D. Nev. May 13, 2026). In addition, Respondents may not re-detain Petitioner under § 1226(c) based on criminal convictions that pre-date this Order unless Petitioner is provided a pre-detention bond hearing at which Respondents bear the burden of justifying

9 – ORDER

Petitioner's detention by clear and convincing evidence. *See Pham*, 717 F. Supp. 3d at 888; *Perera*, 598 F. Supp. 3d at 748.

**CONCLUSION**

The Court GRANTS Petitioner's Amended Petition for Writ of Habeas Corpus [7] and DENIES Respondents' Motion to Dismiss [8].

Respondents must immediately release Petitioner from detention at the Nevada Southern Detention Center. Respondents must do so no later than 8/13/2026 at 8:00 PM. Upon Petitioner's release from detention, the parties must file a Joint Status Report certifying compliance with this Order. The parties' Joint Status Report must be filed no later than 8/14/2026 at 8:00 PM.

In addition, Respondents may not re-detain Petitioner under § 1226(c) based on criminal convictions that pre-date this Order unless Petitioner is provided a pre-detention bond hearing at which Respondents bear the burden of justifying Petitioner's detention by clear and convincing evidence.

The Clerk of the Court is further instructed to substitute the following Respondents on the docket: (1) Todd Blanche for Pamela Bondi, (2) Markwayne Mullin for Kristi Noem, and (3) David Venturella for Todd Lyons.

IT IS SO ORDERED.

DATED this 13th day of August, 2026.

AMY M. BAGGIO
United States District Judge

10 – ORDER